UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

COMPUTER SCIENCES CORPORATION,

Petitioner,

v.

KEMPER CORPORATE SERVICES, INC.,

Respondent.

_____

Civil Action No.:  17-cv-9551

**PETITION TO VACATE
AN ARBITRATION AWARD**

Petitioner Computer Sciences Corporation ("CSC"), by and through its attorneys, Proskauer Rose LLP, for its petition to vacate an arbitration award rendered in favor of respondent Kemper Corporate Services, Inc. ("Kemper"), respectfully alleges as follows:

## INTRODUCTION

1.      In their arbitration agreement, the parties expressly and emphatically deprived the arbitrator of the power to award consequential damages.  Nonetheless, the arbitrator awarded Kemper not only $28 million for its direct damages from the contractual breach he found, but also a further $55 million for damages that are plainly consequential to that breach.  That award must be vacated because the arbitrator thereby exceeded his powers.

2.      The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the "FAA"), provides for vacatur of arbitration awards "where the arbitrators exceeded their powers," and one of the established ways an arbitrator exceeds his powers is by awarding a type of remedy that is barred by the parties' arbitration agreement.  Although an arbitrator's decision is often reviewed with deference, that is not the case in determining whether the award is contrary to the parties' arbitration agreement, which the Court is to decide independently and *de novo*.

3.      Kemper hired CSC to transform and implement a computer program pursuant to a software services agreement, and the parties provided therein for arbitration of disputes – but with express and repeated restrictions on the arbitrator's powers.  The parties stated clearly in their arbitration agreement that the arbitrator "may not (i) award consequential, punitive, special, incidental or exemplary damages."  The parties reinforced that limitation by also agreeing that the arbitrator may not award "any amounts in excess of the limitations delineated in Section 7 of this Agreement," which states in capital letters that "CSC SHALL NEVER BE LIABLE UNDER THIS AGREEMENT TO [KEMPER] OR OTHERS FOR ANY ECONOMIC LOSS OR CONSEQUENTIAL DAMAGES (INCLUDING LOST PROFITS OR SAVINGS) INDIRECT, INCIDENTAL, SPECIAL OR PUNITIVE DAMAGES."  Thus, the parties expressly deprived the arbitrator of the power to award consequential damages.

4.      Kemper claimed that CSC breached a provision of the software services agreement by not making a transformed version of the program "generally available" by January 2, 2011, and the arbitrator agreed.  The arbitrator's finding of breach is clearly erroneous, but he had the power to make that decision.  Based thereon, the arbitrator also had the power to award direct damages for the breach of that provision, which are equal to the amount of Kemper's payments to CSC by the January 2, 2011 deadline of about $28 million because that is "the value of the very performance promised" under the well-established standard of direct damages.

5.      But then the arbitrator exceeded his power by also awarding Kemper all of the other damages it sought totaling a further $55 million, which are consequential damages, namely:  (i) over $25 million for the salaries Kemper paid its own employees and the cost of hardware it bought; (ii) $3 million more as the amount of payments Kemper made under a separate outsourcing agreement for which no breach was alleged or found; and (iii) a further $27

million as the amount paid under the software services agreement after the breach on January 2, 2011.  Those additional damages are all consequential because they are "one step removed from the naked performance promised by the defendant," and so the arbitrator had no power to award them.

6.        Therefore, CSC respectfully requests that this Court vacate the award of those amounts to Kemper and the interest thereon, which presently total in excess of $82 million.

## THE PARTIES

7.        Petitioner Computer Sciences Corporation is a corporation incorporated under the laws of Nevada, with its principal place of business in Virginia.

8.        Respondent Kemper is a corporation incorporated under the laws of Illinois, with its principal place of business in Illinois.  It was formerly known as Unitrin Services Company.

## JURISDICTION, VENUE, AND PROCEDURE

9.        This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy is between citizens of different States and exceeds the sum of $75,000, exclusive of interest and costs.

10.       This Court has personal jurisdiction over Kemper because the parties agreed that the underlying arbitration "shall be held in New York, New York," which constitutes an agreement of the parties to the jurisdiction of the courts there in connection with the arbitration.

11.       Venue for this proceeding is proper in this Court pursuant to Section 10 of the FAA because this is the United States court in and for the district wherein the final award was made, as the arbitration agreement provides that the arbitration "shall be held in New York, New York" and the final award states that it "was made in New York, New York."

3

12.     Pursuant to Section 6 of the FAA, this application shall be made and heard in the manner provided by law for the making and hearing of motions.  As such, accompanying this petition are CSC's notice of motion, supporting affidavit with exhibits, and memorandum of law.

13.     This application is timely pursuant to Section 12 of the FAA because the award was delivered to the parties on November 16, 2017, and the notice of motion to vacate that award will be appropriately served upon Kemper within three months thereafter.

## RELEVANT FACTS

### THE ARBITRATION AND THE AWARD

14.     The arbitration award at issue is the Final Award dated November 15, 2017 and delivered on November 16, 2017 (the "Award") in the arbitration entitled *Kemper Corporate Services, Inc. v. Computer Sciences Corp.*, Case No. 01-15-0005-2283, before the American Arbitration Association.  It was rendered by the sole arbitrator Stephen S. Strick and made in New York, New York.

15.     The arbitration was between Kemper, which is an insurance company, and CSC, which is an information technology and software services provider.  It concerned performance under the parties' "Exceed Agreement," which is comprised of a Master Software License and Service Agreement dated as of November 1, 2008 (the "MSLSA"), as well as Product Order No. 1, Work Orders Nos. 1 and 2, and Addendum No. 1 (the "Addendum").  Three-and-a-half years later, the parties also entered into a separate Master Outsourcing Services Agreement (the "Outsourcing Agreement"), but it is not a part of the Exceed Agreement and performance thereunder was not within the scope of the arbitration.

16.     According to the Award, the purpose of the Exceed Agreement was the transformation of the "Exceed" software from the COBOL computer language to a Java version

for Kemper's use in connection with its property and casualty insurance business.  That involved using a software conversion tool to translate the COBOL code to Java code, followed by hand coding work.  In June 2012, a version of Exceed in Java was implemented for Kemper in Illinois, which Kemper continued to use until late 2015.  The parties then discussed what more would be necessary to implement that software in other states and agreed on a plan that they began to pursue in mid-2013, which prioritized the billing component and thereafter the policy administration and rating components of the software.  In September 2014, the parties discussed the policy administration component, and Kemper later decided to seek a different software solution for those functions.  The parties continued to work towards completing implementation of the billing component of the software, but on July 1, 2015, Kemper gave CSC notice that it had decided to discontinue that work as well.

17.     Kemper commenced the arbitration on October 19, 2015, claiming that CSC breached Section 3.4 of the Addendum, which provides that, "if for reasons not caused by [Kemper], CSC fails to make the Java version of [Exceed] generally available to its licensees [by January 2, 2011], [Kemper] may declare CSC in breach of the [Exceed Agreement]."  Kemper argued that CSC breached all three aspects of this provision because, for reasons not caused by Kemper, CSC failed to create what Kemper considered to be a proper Java version of Exceed, failed to make it "generally available," and failed to do so by January 2, 2011.  Kemper also asserted alternative theories of breach and an alternative claim.

18.     CSC answered that it did make a Java version of Exceed generally available and that the project ended prematurely because Kemper failed to perform adequately its own responsibilities on the project, which led to delays and cost overruns.  Kemper never had the support of its senior management for the project, failed to manage the project adequately, failed

5

to identify properly its business requirements for the software, continually changed the scope of the project, and could still be using the Exceed system if it had not decided to end the project. Among other things, CSC also argued that Kemper's claim is barred because it failed to declare any breach in January 2011 and did not terminate the Exceed Agreement then but instead demanded continued performance.

19.     The arbitrator nonetheless granted Kemper's claim for breach of contract, deciding that CSC breached Section 3.4 of the Addendum because it did not release what he considered to be a "Java version" of Exceed, because what CSC did release was not "generally available," and also because CSC did not do so by the deadline of January 2, 2011, none of which was for reasons caused by Kemper.  The arbitrator also decided that the parties did not extend or eliminate the January 2, 2011 deadline.

20.     With respect to damages, Kemper sought the amount of its payments to CSC under the Exceed Agreement both before and after the breach of Section 3.4 on January 2, 2011, as well as some of its payments under the Outsourcing Agreement, which total $58,598,963.  It also sought the amount it paid its own employees, paid for hardware, and paid for other of its expenses, which total $25,763,929.  Kemper presented those amounts in the reports of its damages expert.

21.     CSC challenged any award of damages for amounts paid under the Exceed Agreement after the purported breach on January 2, 2011, amounts Kemper paid its own employees and paid for other internal costs and expenses, and amounts in connection with the separate Outsourcing Agreement as to which no breach was even claimed.  It also argued that many of the claimed damages were consequential damages that are not permitted under the Exceed Agreement.

22.     The arbitrator nonetheless granted Kemper the entirety of its requested damages, less only a *de minimus* offset.  He granted Kemper the amounts of its claimed payments to CSC both before and after the breach on January 2, 2011 of Section 3.4, including payments under the separate Outsourcing Agreement, less only $66,311 for the value of royalties it received, for a sum of $58,532,652.  And he granted Kemper all of its claimed internal costs comprised of $22,228,998 in internal salaries, $97,942 for hardware, and $3,436,989 for other expenses, totaling $25,763,929, some of which it incurred in connection with the Outsourcing Agreement and not the Exceed Agreement.  The arbitrator also granted Kemper pre-judgment interest at the rate of 9% per annum starting in January 2011, totaling $43,909,137 as of the time of the Award, and its costs and expenses of the arbitration in the amount of $7,176,095.23.

23.     The arbitrator's conclusions are astounding.  He patently ignored the evidence about the parties' relationship on the project and how they modified their obligations and expectations over time, as well as how the software was successfully used, with Kemper even confirming to the Securities and Exchange Commission that the Illinois release resulted in fully functioning systems.  It is also shocking that the arbitrator failed to apply well settled law on election of remedies and allowed Kemper to invoke for the first time in July 2015 a provision concerning anticipated performance by January 2011, as to which the parties had moved forward together and beyond for four-and-a-half years, and then proceeded to allow Kemper to recover based thereon the amount of its payments at any time and not just prior to January 2011.  Indeed, the arbitrator simply accepted in full Kemper's position and issued the Award that Kemper drafted for him, making few modifications and essentially rubber stamping it.  CSC accepts that the grounds for vacatur of an award are limited, though, and so does not raise these and other serious issues here as the basis for its application.  Rather, this application is limited to the issue

7

of the arbitrator exceeding his powers, as clearly limited by the parties in the arbitration

agreement, by awarding what are impermissible consequential damages.

### THE ARBITRATION AGREEMENT AND ITS LIMITATIONS ON THE ARBITRATOR'S POWER

24.     The Exceed Agreement contains an agreement to arbitrate, which is Section 9.3 of

the MSLSA (the "Arbitration Agreement").  Among other things, the Arbitration Agreement

provides in subsection 9.3(e) that:

> Such decisions [of the arbitrator] shall be in writing and shall state
> the findings of fact and conclusions of law upon which the
> decision is based, provided that such decision may not (i) award
> consequential, punitive, special, incidental or exemplary damages
> or any amounts in excess of the limitations delineated in Section 7
> of this Agreement, (ii) include a suspension of any provision
> hereof, or (iii) render a decision which, if reached by a trial court,
> would be vacated, modified or corrected in whole or in part under
> a clear abuse of discretion or error at law standard of review used
> by appellate courts reviewing a trial court decision.

25.     In turn, Section 7.2.2, which is part of Section 7 that is incorporated by reference

into the Arbitration Agreement, provides that:

> EVEN IF [KEMPER'S] EXCLUSIVE REMEDIES FAIL OF
> THEIR ESSENTIAL PURPOSES, CSC SHALL NEVER BE
> LIABLE UNDER THIS AGREEMENT TO [KEMPER] OR
> OTHERS FOR ANY ECONOMIC LOSS OR
> CONSEQUENTIAL DAMAGES (INCLUDING LOST PROFITS
> OR SAVINGS) INDIRECT, INCIDENTAL, SPECIAL OR
> PUNITIVE DAMAGES ARISING OUT OF THIS AGREEMENT
> REGARDLESS OF THE FORM OF THE ACTION, WHETHER
> IN CONTRACT OR TORT (INCLUDING CSC'S OWN
> NEGLIGENCE), LAW OR EQUITY AND REGARDLESS OF
> WHETHER OR NOT THE POSSIBILITY OF SUCH DAMAGES
> HAS BEEN DISCLOSED TO CSC IN ADVANCE OR COULD
> HAVE BEEN REASONABLY FORESEEN BY CSC, OR FOR
> ANY CLAIM OR DAMAGE ASSERTED BY ANY THIRD
> PARTY.

This provision is reciprocal, as Kemper has the same protections pursuant to Section 7.1(g).

26.     Additionally, the Exceed Agreement provides that it "shall be governed by, and interpreted in accordance with, the laws of the State of New York, without regard to its conflict of laws rules, and shall be construed, performed and enforced in all respects in accordance with the laws of that State."

### THE IMPERMISSIBLY AWARDED DAMAGES

27.     The arbitrator granted Kemper $25,763,929 in internal costs and expenses, which according to Kemper are comprised primarily of the amount it paid in salaries to its own employees, but also include the cost of some hardware it purchased and some of Kemper's other out-of-pocket costs.  The interest that the arbitrator awarded thereon currently amounts to $12,479,906, for a present total of $38,243,835.

28.     Additionally, the arbitrator granted Kemper damages based on the amount it paid CSC, of which $3,097,181 was based on the fees Kemper paid under the separate Outsourcing Agreement.  The awarded interest on that amount is currently $982,180, for a present total of $4,079,361.  However, the amount the Arbitrator awarded Kemper in connection with the Outsourcing Agreement also includes the portion of Kemper's internal costs and expenses set out immediately above that Kemper incurred in connection with the Outsourcing Agreement and not the Exceed Agreement.  That portion of the total $25,763,929 in internal costs and expenses is $6,738,794, and the interest on that component is currently $1,989,756.  Thus, the sum of the amounts the arbitrator awarded Kemper in connection with the Outsourcing Agreement is $9,835,975 and the interest thereon is currently $2,971,936, for a present total of $12,807,911.

29.     Further, the damages that the arbitrator granted Kemper also includes a sum equal to amounts Kemper paid CSC under the Exceed Agreement after the purported breach of Section 3.4 of the Addendum for not making a Java version generally available by January 2, 2011.  The

amount of those fees incurred and paid after January 2, 2011 is $26,933,585, and the interest

thereon is currently $13,313,751, for a present total of $40,247,336.

30.     Therefore, the total principal amount of the Award to be vacated, without overlap,

is $55,794,695 plus interest thereon, which is currently $26,775,837, for a present total of

$82,570,532.

<u>**THE AWARD SHOULD BE VACATED**</u>

31.     Section 10(a) of the FAA provides:

> In any of the following cases the United States court in and for the
> district wherein the award was made may make an order vacating
> the award upon the application of any party to the arbitration—
>
>                    *   *   *
>
> (4)  <u>where the arbitrators exceeded their powers</u>, or so imperfectly
> executed them that a mutual, final, and definite award upon the
> subject matter submitted was not made.

32.     One of the established ways an arbitrator exceeds his powers is by awarding a

type of remedy that is barred by the parties' arbitration agreement, including an express

limitation upon his power to grant a remedy.  Such an award should be vacated.

33.     The standard of review for an award challenged as exceeding the arbitrator's

powers under FAA § 10(a)(4) is *de novo*, with no deference to the arbitrator's decision.

34.     In their Arbitration Agreement, the parties provided unambiguously that the

arbitrator "<u>may not</u> (i) award <u>consequential</u>, punitive, <u>special</u>, <u>incidental</u> or exemplary damages

. . . ."  They also immediately thereafter repeated and expanded upon that clear and direct

prohibition by providing that the arbitrator also may not award "any amounts in excess of the

limitations delineated in Section 7 of this Agreement," subsection 7.2.2 of which provides in all

capital letters that "CSC SHALL <u>NEVER</u> BE LIABLE UNDER THIS AGREEMENT TO

[KEMPER] OR OTHERS FOR ANY ECONOMIC LOSS OR <u>CONSEQUENTIAL</u> DAMAGES

10

(INCLUDING LOST PROFITS OR SAVINGS) <u>INDIRECT</u>, <u>INCIDENTAL</u>, <u>SPECIAL</u> OR

PUNITIVE DAMAGES ARISING OUT OF THIS AGREEMENT . . . ."

35.     Thus, in no uncertain terms and in the Arbitration Agreement itself, the parties

expressly and repeatedly precluded the arbitrator from awarding consequential, special, indirect,

or incidental damages.

36.     The arbitrator violated that limitation by awarding Kemper amounts that are

consequential damages.

37.     The only provision of the Exceed Agreement that the arbitrator found CSC

breached was Section 3.4 of the Addendum.  He decided that CSC breached that provision by not

releasing what he considered to be a "Java version" of Exceed, by not making it "generally

available," and by not doing so by the deadline of January 2, 2011, which he found the parties

had not extended or eliminated.  Although the arbitrator's decision that a breach occurred is

clearly erroneous, he had the power to make it and, therefore, the power to award the direct

damages, but not the consequential damages, of that specific breach.  Accordingly, he was

authorized to award Kemper about $28 million, equal to the amount of Kemper's payments to

CSC under the Exceed Agreement by January 2011.

38.     The arbitrator did not have the power, however, to award any consequential,

indirect, or incidental damages from that breach.  He nonetheless did so in three ways.  He

awarded Kemper a further $25 million for the salaries Kemper paid its own employees and the

cost of hardware it bought; he awarded $3 million more as the amount of payments Kemper

made under the separate Outsourcing Agreement for which no breach was found, for a total of

over $10 million awarded in connection with the Outsourcing Agreement; and he awarded $27

million more as the amount paid under the Exceed Agreement after the breach in January 2011.

Those are all consequential damages, and so the arbitrator exceeded his power by awarding

Kemper that additional $55 million plus interest.

### KEMPER'S PAYMENT OF SALARIES TO ITS EMPLOYEES AND ITS OTHER INTERNAL AND OUT-OF-POCKET COSTS ARE CONSEQUENTIAL DAMAGES

39.     It is well recognized that a non-breaching party's payments to its own employees

and its other internal and out-of-pocket costs incurred in connection with the performance of the

breached contract are not direct damages but at most a form of consequential damages.  That is

fully applicable to a contract to provide software services.

40.     Kemper's payment of its employees' salaries, its purchase of hardware, and its

various other expenses are plainly consequential damages.  They are one step removed from the

naked performance promised by CSC pursuant to Section 3.4 of the Addendum, and Kemper was

not thereby trying to recover the value of the very performance promised therein, which Kemper

was already awarded through the amount of its payments to CSC by January 2011.

41.     As such, the arbitrator did not have the power to award these damages totaling

$25,763,929 plus interest, and this Court should vacate the award by that amount.

### KEMPER'S CLAIMED AMOUNTS IN CONNECTION WITH THE OUTSOURCING AGREEMENT ARE CONSEQUENTIAL DAMAGES

42.     Additionally, amounts paid or lost under a separate, non-breached agreement, or

incurred in connection therewith, are consequential damages.

43.     Kemper's payments to CSC under the separate Outsourcing Agreement, as well as

all of its internal costs and expenses incurred in connection therewith, are consequential damages

to CSC's breach of Section 3.4 of the Addendum in the Exceed Agreement.

44.     The Outsourcing Agreement is separate from, and not a part of, the Exceed

Agreement and, indeed, was entered into three-and-a-half years later, which was also a year and

a half after the breach of Section 3.4 on January 2, 2011.  It also had a different purpose, that

being the outsourcing to CSC of the support of Kemper's own, existing software; it contained a

different and incompatible arbitration agreement; and it was governed by Illinois law.  Kemper

did not claim any breach of the Outsourcing Agreement, nor did the arbitrator find one, and that

would be the only breach for which Kemper's payments under the Outsourcing Agreement could

be direct damages.

45.     That these payments or costs may be related to the Exceed Agreement would

serve only as a basis to argue that they are foreseeable with respect to the Exceed Agreement and

thereby consequential damages that could be recoverable absent the contractual bar, but in no

manner would that make them direct damages for the breach of Section 3.4 of the Addendum.

46.     As such, the arbitrator did not have the power to award these damages totaling

9,835,975 plus interest, and this Court should vacate the Award by that amount.  (Because

$6,738,794 of this amount overlaps with the amount addressed above, the additional amount here

is $3,097,181 plus interest.)

### KEMPER'S PAYMENTS UNDER THE EXCEED AGREEMENT AFTER THE BREACH ON JANUARY 2, 2011 ARE CONSEQUENTIAL DAMAGES

47.     The arbitrator found that CSC breached Section 3.4 by failing to make a Java

version of Exceed generally available by the January 2, 2011 deadline and found that the parties

did not extend or eliminate that deadline.  Based thereon, he also decided that pre-judgment

interest should start from January 3, 2011.  That is the sole breach that Kemper claimed and the

sole breach that the arbitrator found.  Therefore, the payments Kemper made after the January 2,

2011 breach are not direct damages because they do not directly flow from CSC's non-

performance in failing to make a Java version of Exceed generally available by the contractual

deadline in Section 3.4.

48.     While the payments Kemper made to CSC prior to the breach constitute losses as a natural consequence of the breach, that is not the case for the payments Kemper decided to continue making _after_ the breach.  Indeed, Kemper had the right to declare a breach and terminate the Exceed Agreement on January 2, 2011, but it chose not to do so.  Instead, Kemper chose to have CSC continue to work on the project for another four-and-a-half years.  The payments Kemper made during those four-and-a-half years after January 2, 2011 are, therefore, not losses directly related to the breach, but rather the result of Kemper's decision to continue the project after the breach.  These payments are plainly one step removed from the breach of Section 3.4 and, therefore, by definition, consequential damages.

49.     The post-January 2, 2011 amounts are also a second step removed from the breach because Section 3.4 applied to the first phase of the project and these later payments related primarily to the second phase.  In the words of the arbitrator, the Exceed project was "to be accomplished in two phases:  a first transformation phase and a second implementation phase.  The goal of the transformation phase was for CSC to make a 'Java version' of Exceed 'generally available' . . . [and] [t]he goal of the second implementation phase was to effectuate the Exceed software at Kemper . . . ."  Section 3.4 concerned a deliverable with respect to the first phase, and that is the breach the arbitrator found; he found no breach as to the second implementation phase.  Yet most of the work CSC performed after January 2, 2011 related to this second phase and in particular the implementation of the software in Kemper's Illinois business.  The fees Kemper paid for the second phase did not naturally and directly flow from CSC's breach of its obligations under the first phase.

50.     Therefore, Kemper's payments to CSC after January 2, 2011 are consequential damages.  As such, the arbitrator did not have the power to award these damages totaling

$26,933,585 plus interest, and this Court should vacate the award should be vacate the award by that amount.

51.     In sum, the total principal amount of the Award to be vacated, without overlap, is $55,794,695 plus interest thereon, which is currently $26,775,837, for a present total of $82,570,532.

### REQUESTED RELIEF

WHEREFORE, petitioner Computer Sciences Corporation respectfully requests an order:

(i)     granting this petition;

(ii)    vacating the Award to Kemper of $55,794,695 plus interest thereon which is currently $26,775,837 for a present total of $82,570,532; and

(iii)   granting such other and further relief that the Court deems just and proper.

Dated: December 6, 2017
       New York, New York

PROSKAUER ROSE LLP

By:  _____
     Peter J.W. Sherwin
     Mark D. Harris
     Ana Vermal
     Stacey P. Eilbaum
     Om V. Alladi

Eleven Times Square
New York, New York  10036
(212) 969-3000

*Attorneys for Petitioner*
*Computer Sciences Corporation*