IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KEMPER CORPORATE SERVICES, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL NO. 3:17-CV-2769-S |
| COMPUTER SCIENCES CORPORATION AND DXC TECHNOLOGY COMPANY, | § § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS**

By electronic order of reference dated April 24, 2018 (doc. 70), before the court are the *Amended Motion to Confirm Arbitration Award*, filed November 17, 2017 (doc. 16), and the *Petition to Vacate An Arbitration Award*, filed December 6, 2017 (doc. 59). Based on the relevant filings, evidence, and applicable law, the motion to vacate the final arbitration award should be **DENIED**, and the motion to confirm the award should be **GRANTED**.

**I. FACTUAL BACKGROUND**

On January 2, 2009, Kemper Corporate Services, Inc. (Plaintiff), entered into a multi-year services contract with Computer Sciences Corporation (Defendant) to license its "Exceed" program software for use in connection with Plaintiff's property and casualty insurance businesses. (docs. 64 at 8; 72 at 9; 73-1 at 2-3.)[1] The parties' contract was embodied in the "Exceed Agreement," which was comprised of a Master Software License and Service Agreement (the "MSLSA"), two work orders, a product order, and an addendum. (docs. 65 at 9, 66-133; 73-1 at 2-3, 10-77.) Under the Exceed Agreement, the parties agreed that Defendant would transform the COBOL language

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

used in its insurance software to a Java version for use by Plaintiff. (*Id.*)

The MSLSA specifically stated that "all disputes arising out of or relating to [the Exceed Agreement], or the breach thereof," shall to be submitted to non-binding mediation. (doc. 65 at 87.) If a dispute was not resolved by mediation, the parties agreed that a final determination of the dispute could only be resolved through binding arbitration. (*Id.* at 88.) Section 9.3(e) of the MSLSA provided:

> With respect to any matter brought before the arbitrator, the arbitrator shall make a decision having regard to the intentions of the parties, the terms of this Agreement, and custom and usage of the insurance and data processing industry. Such decisions shall be in writing and shall state the findings of fact and conclusions of law upon which the decision is based, provided that such decision may not (I) award consequential, punitive, special, incidental or exemplary damages or any amounts in excess of the limitations delineated in Section 7 of this Agreement….

(*Id.*) The limitations delineated in § 7 of the MSLSA provided:

> 7.2.2 EVEN IF CUSTOMER'S EXCLUSIVE REMEDIES FAIL OF THEIR ESSENTIAL PURPOSES, CSC SHALL NEVER BE LIABLE UNDER THIS AGREEMENT TO CUSTOMER OR OTHERS FOR ANY ECONOMIC LOSS OR CONSEQUENTIAL DAMAGES (INCLUDING LOST PROFITS OR SAVINGS) INDIRECT, INCIDENTAL, SPECIAL OR PUNITIVE DAMAGES ARISING OUT OF THIS AGREEMENT REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT OR TORT (INCLUDING CSC'S OWN NEGLIGENCE), LAW OR EQUITY AND REGARDLESS WHETHER OR NOT THE POSSIBILITY OF SUCH DAMAGES HAS BEEN DISCLOSED TO CSC IN ADVANCE OR COULD HAVE BEEN REASONABLY FORESEEN BY CSC, OR FOR ANY CLAIM OR DAMAGE ASSERTED BY ANY THIRD PARTY.
> …
>
> 7.2.3 IN NO EVENT SHALL CUSTOMER BE ENTITLED TO AN AWARD OF PUNITIVE, EXEMPLARY OR MULTIPLIED DAMAGES FOR ANY BREACH OF THIS AGREEMENT BY CSC.

(*Id.* at 86-87.)

After experiencing numerous problems with the software and failing to reach a resolution through non-binding mediation, on October 19, 2015, Plaintiff filed a demand for arbitration with

2

the American Arbitration Association. (doc. 65 at 25.) It alleged, in part, that Defendant breached § 3.4 of Addendum 1 by failing to make a "Java version" of Defendant's software "generally available" to its licensees, including Plaintiff. (*Id.* at 25-26.) Its request for damages sought: 1) "all payments made by [Plaintiff] pursuant to the agreements", and 2) all additional direct damages, "including internal salaries and other expenses [Plaintiff] had incurred on the project." (doc. 73-1 at 360-65.)

During the arbitration proceedings, the arbitrator received several submissions from the parties, including answering statements and counterclaims and pre-hearing briefs. (doc. 72 at 12-13; doc. 73-1 at 4, 236-300; 421-443.)[2] He conducted a ten-day evidentiary hearing, during which he heard testimony from live witnesses, witnesses by deposition, and experts, and received approximately 620 exhibits in evidence. (doc. 73-1 at 4.) After reviewing the parties' post-hearing briefs, the arbitrator sent the parties a letter listing fifteen "issues/areas" that needed briefing, including "why the monetary claims made by Kemper other than the 'CSC spend' are direct or consequential damages under NY law." (doc. 72 at 12-13; doc. 73-1 at 690-93.) Both parties responded to the letter with supplemental briefs on direct and consequential damages, and it was heard by the arbitrator again during closing arguments. (doc. 72 at 13.)

The arbitrator issued a final arbitration award on November 15, 2017 ("Final Award"), in which he concluded that Defendant breached the Exceed Agreement. (doc. 73-1 at 325-78.) He also concluded that Plaintiff was entitled to the following damages in accordance with New York law and the terms of the Exceed Agreement:

- $58,532,652 of the payments Plaintiff made to Defendant under the Exceed Agreement;

---

[2] The exhibits in Plaintiff's appendix were not docketed in the order in which they are listed in the table of contents.

- $25,763,929 for the internal expenses of Plaintiff that were the natural and probable cause of Defendant's breach of the Exceed Agreement;

- Pre-judgment interest at a rate of 9% per annum until the award was paid or until it was confirmed and reduced to judgment by a court; and

- $7,176,095.23 for the costs and expenses incurred by Plaintiff in connection with the arbitration.

(*Id.* at 374-75.)

On October 10, 2017, Plaintiff filed this action to confirm the arbitration award. (doc. 1.) Subsequently, Defendant moved to vacate the arbitration award in the Southern District of New York. (doc. 59.) After an oral hearing, the New York court stayed the vacatur proceeding to allow this court to decide whether the two proceedings should be heard together. (doc. 73-1 at 414-20.) The proceedings were consolidated for hearing in this district, and the parties' proposed briefing schedule was adopted. (docs. 58, 54.) With timely-filed responses and replies,[3] the motions are now ripe for recommendation.

## II. ANALYSIS

When a party to an arbitration timely applies for an order confirming an award, the Federal Arbitration Act (FAA) provides that "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in § 10 and § 11." 9 U.S.C. § 9. A court may only vacate an arbitration award where: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption among the arbitrators; (3) the arbitrators were "guilty of any misbehavior" that prejudiced a party's rights; or (4) the arbitrators exceeded their powers. *Id.* § 10(a). Because the FAA does not include an additional ground to vacate an arbitration award based

---

[3]The docket contains two identical copies of Defendant's brief in support of its motion to vacate and response to Plaintiff's motion to compel, (docs. 56, 64), and as well as of the supporting appendix, (docs. 57, 65).

on mere errors in interpretation or application of the law, or mistakes in factfinding, courts must not "conduct a review of an arbitrator's decision on the merits." *Householder Grp. v. Caughran*, 354 F. App'x 848, 851 (5th Cir. 2009) (per curiam) (citations omitted); *see Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009) (holding there are no longer nonstatutory grounds for vacating arbitration awards).

Given the strong federal policy favoring arbitration, "'[j]udicial review of an arbitration award is extraordinarily narrow.'" *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 472 (5th Cir. 2012) (quoting *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002)). In fact, courts consistently describe the narrowness of judicial review of arbitration awards as "among the narrowest known to the law. *Pfeifle v. Chemoil Corp.,* 73 F. App'x 720, 723 (5th Cir. 2003). The arbitrator's decision must be given a high level of deference and "[t]he court must resolve any doubts or uncertainties in favor of upholding the award." *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 385 n.9 (5th Cir. 2004).

**A.    Standard of Review**

Defendant initially argues that the high level of deference generally given to arbitration awards should not be given in this case. It contends that because the arbitrator exceeded his authority by awarding consequential damages, which the Exceed Agreement expressly prohibited him from doing, *de novo* review of the arbitration award is appropriate. (*See* doc. 64 at 16.) It asks the court to "scrutinize the award to see whether the three challenged categories of damages are consequential" and, in turn, determine that the arbitrator exceeded the express limitations of the agreement and vacate the award. (doc. 75 at 14.)

"Whether an arbitrator has exceeded his powers is tied closely to the applicable standard of

5

review." *Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.,* 713 F.3d 797, 802 (5th Cir. 2013). To determining whether an arbitrator exceeded his powers, courts first look to the contract to determine whether the arbitrator acted "contrary to express contractual provisions." *Glover v. IBP, Inc.*, 334 F.3d 471, 474 (5th Cir. 2003). "When an agreement authorizes an arbitrator to interpret and apply a contract, the arbitrator's construction of that contract must be enforced as long as the arbitrator's decision 'draws its essence' from the underlying contract." *McVay v. Halliburton Energy Servs., Inc.*, 688 F. Supp. 2d 556, 561-62 (N.D. Tex. 2009) (citing *Glover*, 334 F.3d at 474). The sole question under § 10(a)(4) "is whether the arbitrators even arguably interpreted the [a]greement in reaching their award; it is not whether their interpretations of the [a]greement or the governing law were correct." *BNSF Ry. Co. v. Alstom Transp., Inc.*, 777 F.3d 785, 789 (5th Cir. 2015). "However, where the arbitrator exceeds the express limitations of his contractual mandate, judicial deference is at an end." *Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 602 (5th Cir. 1989). In other words, if the contract "creates a plain limitation on the authority of an arbitrator, [the court] will vacate an award that ignores the limitation." *Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 401 (5th Cir. 2007), *overruled on other grounds by Hall St. Assoc., L.L.C. v. Matel, Inc.*, 552 U.S. 576, 584-86 (2008).

For example, in *Smith v. Transport Workers Union of Am., AFL–CIO Air Transport Local 556*, 374 F.3d 372, 374 (5th Cir. 2004), the arbitrator modified his arbitration award one month after issuing it, although the arbitration agreement stated that "[t]he arbitrators *sua sponte* may amend or correct their award within three business days after the award, but the parties shall not have a right to seek correction of the award." The Fifth Circuit found that the plain wording in the agreement demonstrated the parties' intent to limit the arbitrator from correcting or amending his decision "on

the arbitrator's own motion more than three business days after the award." *Id.* at 375. Because the arbitrator modified the original award outside this time frame, the Fifth Circuit concluded that he acted beyond the reach of his power, and it affirmed the district court's judgment vacating the modified award and confirming the original award. *Id.*

In *Davey v. First Command Fin. Servs., Inc.*, No. 3:11-CV-1510-G, 2012 WL 277968 (N.D. Tex. Jan. 31, 2012) (J. Fish), the court considered whether an arbitration panel exceeded its authority by awarding punitive damages. The contract between the two parties stated that "the arbitrator [would] not have the right to award exemplary or punitive damages." *Id.* at *2. The arbitration panel explicitly awarded the plaintiff $375,000 in punitive damages. *Id.* The defendant argued that the court should vacate the panel's award of punitive damages because the arbitration agreement expressly prohibited the awarding of punitive damages. The district court agreed and vacated the arbitration award "[b]ecause there [was] a plain and unambiguous provision in the agreement that prohibits punitive damages," so the arbitration panel acted in contravention of the arbitration agreement by awarding punitive damages. *Id.* at *4.

Here, the parties agreed to give the arbitrator the power to "award any relief", provided that he did not "award consequential, punitive, special, incidental or exemplary damages or any amounts in excess of the limitations delineated in Section 7 of this Agreement…." (doc. 65 at 88.) This language establishes an express limitation on *awarding* consequential damages; it does not limit the arbitrator from determining the nature or category of amounts awarded in his decision.[4] The arbitrator reviewed the evidence and arguments presented by both sides and awarded damages that

---

[4]Defendant appears to suggest that the prohibition on consequential damages implicitly limited the arbitrator's power to even consider arguments regarding damages and decide whether certain damages were direct or consequential. (doc. 75 at 13.) The limitations provided in the Exceed Agreement do not support such a conclusion, however.

were permitted under his interpretation of the terms of the Exceed Agreement and applicable law. (doc. 73-1 at 325-78.) As required under the Exceed Agreement, the Final Award set out the arbitrator's decisions on all matters properly before him for consideration, along with supporting findings of facts and conclusions of law. (*Id.*) It addressed damages, including a discussion of each side's arguments on the issue of consequential damages, as well as the amount appropriate based on the terms of the Exceed Agreement and New York law. (*Id.*) The arbitrator found that each of the amounts he awarded to Plaintiff constituted damages directly resulting from Defendant's breach of the Exceed Agreement. (*Id.* at 361-63.) Unlike the arbitrators in *Smith* and *Davey*, the arbitrator in this case conformed to the plain limitations expressed in the Exceed Agreement.

As explained by the Supreme Court, an arbitrator's decision based on his interpretation of the parties' agreement to arbitrate, even if incorrect, cannot be overturned. *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 572 (2013) ("The arbitrator's construction holds, however good, bad, or ugly."). Even assuming, without deciding, that the arbitrator incorrectly characterized consequential damages as direct damages, as Defendant argues, it contractually agreed to be bound by the arbitrator's final determinations. *See United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960). "By consenting to arbitration, parties exchange 'the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Mantle v. Upper Deck Co.*, 956 F. Supp. 719, 726 (N.D. Tex. 1997) (J. Fitzwater) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth. Inc.*, 473 U.S. 614, 628 (1985)). As the arbitrator did not exceed the express limitations of the Exceed Agreement, the standard of review Defendant seeks is not supported by the law of this circuit. *See Householder*, 354 F. App'x at 851 (explaining courts lack the authority to conduct a review of an arbitrator's award on the merits).

## C. Exceeding Authority

Defendant seeks vacatur of the disputed damages under FAA § 10(a)(4) on grounds that the "arbitrator exceeded his power by awarding Kemper [an] additional $55 million plus interest" in consequential damages. (doc. 56 at 18.) Defendant argues that the following damages do not constitute direct damages under the Exceed Agreement and New York law, but are really an award of consequential, indirect, or incidental damages: 1) $25 million for Plaintiff's salary payments to its own employees, other internal costs, and the cost of hardware it bought; 2) $3 million as the amount of payments Plaintiff made under the Outsourcing agreement; and 3) $27 million as the amount paid under the Exceed Agreement after the breach in January 2011. (doc. 56 at 17-18.) The arbitrator already considered these arguments and found that: 1) "[T]he internal expenses claimed are properly recoverable as direct damages in that they were the natural and probable cause of Defendant's breach of § 3.4; 2) "the amounts paid under the Outsourcing Agreement Statements of Work at issue constitute direct damages recoverable under § 3.4 of Addendum 1"; and 3) "a plain reading of § 3.4 as written, neither limits Plaintiff's recovery to any particular period of time nor to payments made before the January 2, 2011, deadline." (doc. 73-1 at 631-69.) Other than the award in damages reached by the arbitrator in his final decision, Defendant has not identified any instances where the arbitrator exceeded his power.

As discussed, the court must defer to the findings and determinations reached by the arbitrator on the issue of damages in this case. The court may not overturn the arbitrator's decision "based on the merits of a party's claim," as the court does "not have the authority to conduct a review of an arbitrator's decision on the merits." *Householder Grp.*, 354 F. App'x at 851; *see also Citigroup Global Markets, Inc.*, 562 F.3d at 351 (stating that awards are upheld "even if based upon

9

error in law or fact."). So long as "the 'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," the award must stand. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). In analyzing whether the arbitrator is applying the contract, the Fifth Circuit has stated that "[t]he award itself will often suggest on its face that the arbitrator was arguably interpreting the contract." *BNSF*, 777 F.3d at 788. "Several pieces of relevant evidence can be gleaned from the award's text, including but not limited to:(1) whether the arbitrator identifies her task as interpreting the contract; (2) whether she cites and analyzes the text of the contract; and (3) whether her conclusions are framed in terms of the contract's meaning." *Id.*

Here, the arbitrator acted in accordance with the powers delegated to him under the arbitration agreement. The parties were given the opportunity to conduct discovery and to submit evidence and briefs in support of their respective arguments on the issues. (doc. 73-1 at 326-44.) The arbitrator conducted a hearing and asked the parties to provide further briefing on issues requiring additional support or clarification. The record demonstrates the arbitrator's exhaustive efforts in considering the issue of damages, and in particularly, consequential damages. Throughout the Final Award, he repeatedly cited and analyzed the Exceed Agreement and discussed the issues framed within the language of the agreement.

The extent of the arbitrator's authority is determined by "the provisions under which the [arbitrator was] appointed." *BNSF* 777 F.3d. at 788. The arbitrator explicitly referred to MSLSA §9.3(e), which gave him the authority to "make a decision having a regard to the intentions of the parties" and the "terms of this agreement." (*See* doc. 57 at 17.) To act in accordance with the terms of the agreement, the arbitrator explicitly stated that:

> "In reaching the findings set forth herein, I have carefully reviewed the evidence and argument of the parties concerning their intentions with regard to the Exceed Agreement and

10

the remedies intended, the language of the agreement itself. . . ." (doc. 57 at 17.) In responding to Defendant's arguments concerning damages, the arbitrator couched his decision in language that referred to a "plain reading of § 3.4" of the agreement and used New York law as ordered by the agreement per MSLSA §11.7. (*See* doc. 57 at 49-51.) The references to the direct text of the agreement are evidence that the arbitrator applied the contract in making his determinations and in acting within the scope of his authority.

Nothing in the final award suggests that the arbitrator acted contrary to the express contractual provisions of the arbitration agreement, or the plain limitations on his powers. *Apache*, 480 F.3d at 401. Defendant does not allege, much less prove, that the arbitrator failed to act in accordance with the express terms of the arbitration agreement, or that the arbitrator acted beyond the plain limitations on his power. Resolving all doubts in favor of the arbitration award, Defendant has not shown a basis for vacating the arbitration award under § 10(a)(4) of the FAA. Accordingly, Defendant's motion to vacate the arbitration award should be denied.

Because Defendant failed to demonstrate that the arbitration award must be vacated, modified, or corrected, Plaintiff's motion to confirm the arbitration award should be granted.

### III. RECOMMENDATION

Defendant's motion to vacate the final arbitration award should be **DENIED**. Plaintiff's motion to confirm the award should be **GRANTED**, and the Final Award dated November 15, 2017, in the arbitration matter between Plaintiff Kemper Corporate Services, Inc., and Computer Sciences Corporation and DXC Technology Company in the sum total of $ 91,472,676.23, plus post-award interest at the rate of 9% per annum from the date of the award until the date it is confirmed and reduced to judgment, should be **CONFIRMED**. Plaintiff Kemper Corporate Services, Inc., should

also be awarded post-judgment interest at the applicable federal rate[5] from the date of judgment until it is paid in full.

**SO RECOMMENDED** on this 27th day of August, 2018.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[5] The post-judgment interest rate is based upon the applicable federal rate. *See* 28 U.S.C. § 1961.